# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

ELSA FLORES DIAZ and )
EDWIN MEDRANO CACERES, )
for themselves and on behalf )
of their minor children )
E.M.F., V.M.F., B.M.F., and )
H.M.F., )
            )
      Plaintiffs, )
            )
vs. )   No. _____
            )   Jury Trial Demanded
            )
THE PARTNERSHIP, INC. )
            )
      Defendant. )

## The Diaz Family's Complaint

## Introductory Statement

1.    Plaintiffs (collectively the "Diaz Family") bring this case against Defendant The Partnership, Inc., the operator (and seemingly, through an affiliate, the owner) of a low-income apartment complex, for violation of the federal Fair Housing Act

and Georgia state law. The Partnership, Inc. ("TPI") advertises the apartment complex as Seven Courts Apartments. Seven Courts Apartments is located at 2800 Martin Luther King Drive, Atlanta, Georgia 30311.

2.     Broadly speaking, the Diaz Family's state law claims relate to TPI's refusal to maintain safe and secure premises, which foreseeably exposed the Diaz Family to criminal activity culminating in a violent home invasion and armed burglary. Even though Seven Courts Apartments is in a high-crime neighborhood and the Diaz Family was the direct target of two prior attempted home invasions, TPI refused to maintain even baseline security measures such as working security cameras or outdoor lighting. In fact, TPI refused to repair the Diaz Family's door jamb or window after the first two home invasion attempts. Predictably, on the night of July 22, 2021, an armed assailant took advantage of TPI's nonexistent security to break into the Diaz Family's home at gunpoint, steal their savings and other valuables, and leave the

family traumatized. Now the young Diaz children wake up multiple nights in fear, sometimes screaming "They're robbing me; they're robbing me!" In response to this armed burglary and battery, TPI did not implement better security. Instead, TPI told the Diaz Family to move out, evicting them not because they did anything wrong, but because they were crime victims.

3.     That TPI told the Diaz Family to leave should come as no surprise because TPI had already made it clear that they—and other Latinos—were not welcome there. While the Diaz Family was living there, the Diaz children occasionally tried to play on the apartment complex's playground. When they did, though, TPI's managers repeatedly screamed at them to leave the playground because it was "not for Latinos" and "only for Americans." Not only was this conduct *per se* discrimination under the Fair Housing Act, the accusation that the Diaz children were not "real Americans" and didn't even have the right to play on the playground was psychologically damaging and deprived the Diaz Family of their

right to enjoy their home on the same terms as non-Latino residents.

## Jurisdiction and Venue

4.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case arises under the laws of the United States—specifically the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*—and pursuant to 28 U.S.C. § 1332 because the plaintiffs are residents of Georgia and TPI is apparently a resident of Florida and the amount in controversy exceeds $75,000.

5.     The Court has personal jurisdiction over TPI because this case arises from the TPI's deliberate affiliation with Georgia and tortious acts and omissions committed in Georgia.

6.     Venue is proper in the Court's Atlanta Division because a substantial part of the events and omissions giving rise to the controversy occurred in that division. *See* 28 U.S.C. § 1391(b)(2).

**Parties**

7.     Plaintiffs (the "Diaz Family") are Honduran nationals who fled violence against themselves and their relatives. They made their way to the U.S. through Guatemala and Mexico. After passing a credible fear interview, the U.S. Government paroled the Diaz Family into the U.S. at Laredo, Texas in 2016. Since that time, they have resided in the Atlanta area. Mr. and Mrs. Diaz provide for their children by cleaning churches, among other things. The family members are presently applicants for asylum and related protections.

8.     TPI appears to both manage and own Seven Courts Apartments. TPI holds itself out as the "professional manage[r]" of Seven Courts Apartments.[1] According to TPI's website, the company "specializes in ownership and property management of affordable multifamily housing communities throughout the states

---

[1] Seven Courts Apartments, https://sevencourtsapartments.com.

of Florida and Georgia," including Seven Courts Apartments.[2] TPI also represents that the properties it offers—like Seven Courts Apartments—are "decent, safe, sanitary, and affordable housing [for] very low, low, and moderate income families."[3] According to filings with the Georgia Secretary of State, TPI is a Florida corporation.

9.     TPI appears to own or operate Seven Courts Apartments through an affiliated company, Seven Courts Partners, L.P., which is listed as the complex's "owner" on the lease agreement. According to Seven Courts Apartments, L.P.'s filings with the Georgia Secretary of State, that company is a Colorado limited partnership. But the Colorado Secretary of State's database appears to contain no record of such a company. TPI and Seven Courts Partners, L.P. appear to share common ownership and control, including by Hugh Jacobs, who is variously listed in corporate filings as the CEO of

---

[2] TPI, https://gotpi.org/tpi-property-management.html.
[3] TPI, Our Properties, Seven Courts Apartments, https://gotpi.org/seven-courts-apartments.html.

TPI and manager of Seven Courts Partners, L.P. TPI has filed several dispossessory actions in Fulton County Magistrate Court as Seven Courts, The Partnership, Inc.[4] Herein, TPI refers to that entity and any affiliates or agents through which TPI owns or operates Seven Courts Apartments.

10.    Regardless of whether TPI is the direct record owner of the property, TPI has possession, custody, and control of the property as its manager. That is, TPI has personal charge of the property and exercises the rights of management and control over it.

### Factual Allegations

11.    In or about November 2019, the Diaz Family moved into Seven Courts Apartments.

---

[4] *See, e.g.*, *Seven Courts, The Partnership Inc. v. Williams*, No. 20ED167195 (Fulton County, Georgia Magistrate Court); *Seven Courts, The Partnership Inc. v. Avery*, No. 20ED173473 (Fulton County, Georgia Magistrate Court).

12.   Contrary to TPI's representations, the complex was neither "decent," nor "safe," nor "sanitary." It was dirty, dangerous, and hostile.

13.   For instance, TPI discriminated against Plaintiffs in violation of the Fair Housing Act. The FHA forbids, *inter alia*, discrimination "against any person in the terms, conditions, or privileges of sale or rental or a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, . . . or national origin." 42 U.S.C. § 3604(b). Seven Courts Apartments has playground space and a basketball court, which are intended for and offered primarily for the use of children (and their families). When the Diaz children would play on the playground, however, the managers of Seven Courts Apartments would chase the Diaz children off the playground, yelling that the facilities are "only for Americans" and are "not for Latinos." Depriving children of equal access to playground equipment because they are Latino and "not American" constitutes *per se*

discrimination on the basis of race, color, and/or national origin in violation of the FHA (in addition to being cruel and dehumanizing).

14.   That was not the only way TPI preyed on the Diaz Family. TPI knowingly failed to maintain safe premises for tenants like the Diaz Family because it was more profitable for the company to skimp on necessary security measures.

15.   Seven Courts Apartments is located in a relatively high-crime part of Atlanta (APD Zone Four) and was specifically the site of many violent crimes against people and property. Data from the Atlanta Police Department reflect dozens of 911 calls every year to Seven Courts Apartments for shootings, other assaults, and armed robberies, among other violent crimes.[5] Gang and drug activity were conducted in the open. In recent years, the complex has been the site of high-profile shootings and killings.[6]

---

[5] Atlanta Police Department, Calls for Service Data.
[6] *See, e.g.*, 11Alive, One Injured, Another Dead in West Atlanta Shooting (April 6, 2019), https://www.11alive.com/article/news/crime/1-injured-another-dead-in-atlanta-shooting/85-070ea2d7-777d-489b-8ae6-735f812d0b7a.

16.    The Diaz Family specifically was the subject of several attempted home invasions. In late 2020, the Diaz Family was hosting a Bible study in their apartment with several members of their congregation. While they were praying, a man broke down the door—presumably to rob the Diaz Family—but ran away when he saw a large number of witnesses in the apartment. TPI was aware of the attempted robbery but failed to institute security measures in response. TPI also refused to fix the broken door jamb. Prior to that, an intruder tried to force his way in through a window, damaging the window frame in the process. TPI refused to repair the damage—or increase security measures.

17.    Despite ample warning of violence at the complex, TPI refused to provide adequate security measures to protect its tenants. TPI did not provide security guards, did not provide a closed security fence, did not provide working security cameras, and did not even provide working lighting. In fact, TPI went as far as

disclaiming any "oblig[ation] to furnish" any "forms of security" to residents,[7] which is flatly contrary to Georgia law. OCGA § 51-3-1.

18.   The Diaz Family was the victim of a foreseeable violent home invasion, battery, and robbery the night of July 22, 2021. That night, they had been outside on complex grounds and returned to their apartment at approximately 10 PM, after first making a stop at the mailbox. Because Seven Courts Apartments refused to provide adequate and working outdoor lighting, it was dark at the entrance to their apartment—making them especially vulnerable to attack.

19.   While they opened their apartment door in the darkness, an "unknown tall skinny dark skinned Male wearing all Black with Black gloves and a Black ski mask approached them from behind with a Black handgun."[8] The man forced the Diaz Family into their apartment, and then pushed Mr. and Mrs. Diaz

---

[7] Seven Courts Apartments Lease Contract.
[8] Atlanta Police Department, Case # 212021907 Incident Report.

to the ground. He pointed his gun at Mr. and Mrs. Diaz and demanded their money, while the Diaz children fled and hid together in a closet. The robber grabbed Mr. Diaz "by the back of his neck and continued demanding money."[9] He forced Mr. Diaz to show him where he kept his money; the intruder stole the family's savings and Mrs. Diaz's wedding ring and left.

20. From the closet where she and her siblings were hiding, one of the Diaz children managed to call 911. APD arrived and began their investigation. An ambulance came to check the condition of Mr. Diaz's heart, although he ultimately did not go to the hospital.

21. When APD asked management for security footage, Seven Courts Apartments' management informed the police that there were no working cameras, which inhibited APD's investigation and left the assailant on the street.

---

[9] *Id.*

22.    When the Diaz Family raised the dangerous conditions
with Seven Courts Apartments' management, the manager told Mr.
Diaz that he should simply buy a gun and protect himself. Mr. Diaz
responded that the Lord is his protection. TPI even refused to
install working lighting after the home invasion.

23.    Seven Courts Apartments' management admitted to
Mrs. Diaz that none of the security cameras were ever on because
the owners did not want working cameras or believed them to be
too expensive. But, the manager told Mrs. Diaz, the owners would
have security cameras protect one asset they were interested in: the
dumpster. The owners cared enough to prevent illegal dumping, but
not enough to prevent foreseeable violent crime against their
tenants.

24.    TPI's grossly negligent lack of security caused the
violent home invasion suffered by the Diaz family. Had TPI
implemented security measures such as working outdoor lighting,
working security cameras, security guards, or other reasonable

measures, it would have prevented the attack. Instead, TPI created conditions that were ideal for violent criminals to attack tenants like the Diaz family without reprucussion, and the conditions created by TPI foreseeably led to the violent home invasion, battery, and armed burglary suffered by the Diaz family.

25.    Seven Courts Apartments was otherwise not safe or habitable. For example, there were often leaks from upstairs apartments, which present a risk of mold growth, property damage, and at the extreme property failure. When Ms. Diaz would ask Seven Courts Apartments' management to address the leaks or address security concerns, the managers would shut the door in her face.

26.    In the days after the robbery, Seven Courts Apartments management abruptly told the Diaz Family that they had to move out. The "reasoning" seems to have something to do with perceiving that the Diaz Family was a liability for TPI.

27.   As a result of the unsafe conditions, refusal to adopt reasonable security measures, TPI's demand that they leave after suffering a violent criminal attack, and overt discrimination at Seven Courts Apartments, the Diaz Family fled and is residing elsewhere in Atlanta.

28.   The Diaz children have been traumatized and remain fearful. They wake up from nightmares screaming, "They're robbing me; they're robbing me!" And experiencing overt discrimination—being told they cannot even play on a playground because of their background, that they are less than "real Americans"—will interfere with their development and education.

29.   As a result of the foregoing conduct, Plaintiffs have suffered and will continue to suffer damages to their persons and property.

## Causes of Action

## Count One: Violation of the Fair Housing Act

30.     The foregoing paragraphs are incorporated as if set forth herein.

31.     Pursuant to the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, TPI cannot discriminate in the provision of housing-related facilities on the basis of race, color, or national origin.

32.     TPI violated the Fair Housing Act by preventing the Diaz Family from using the complex's facilities, including the playground area, because they are Latino and were not born in the United States. That is *per se* discrimination in violation of the Fair Housing Act.

33.     The Diaz Family was damaged as a result.

## Count Two: Premises Liability

34.     The foregoing paragraphs are incorporated as if set forth herein.

16

35.    Pursuant to OCGA § 51-3-1, TPI was required to "exercise ordinary care in keeping the premises [of Seven Courts Apartments] safe."

36.    As set forth above, TPI was aware both generally, and specifically as to the Diaz Family, that the complex was not safe. Yet TPI willfully refused to implement basic security measures to prevent further violence.

37.    As a result, the Diaz Family was injured by foreseeable criminal conduct. And as a result, TPI "is liable in damages" to the Diaz Family for the "injuries caused by [its] failure" to keep the complex "safe." OCGA § 51-3-1.

## Count Three: Punitive Damages

38.    The foregoing paragraphs are incorporated as if set forth herein.

39.    The conduct of TPI was willful and wanton, justifying an award of punitive damages. As set forth above, TPI knew that the complex was unsafe, and yet chose for financial reasons not to

provide adequate security, leading to foreseeable injuries. Further, TPI's discrimination was willful, obviously unlawful, and directed at children, which is reprehensible.

### Count Four: Attorneys' Fees Under O.C.G.A. § 13-6-11

40.     The conduct of TPI in connection with the Counts alleged above was performed in bad faith and has caused unnecessary trouble and expense, entitling Plaintiffs to attorneys' fees under O.C.G.A. § 13-6-11.

### Prayer for Relief

Plaintiffs respectfully request the following relief:

a. Trial by jury[10];

b. Compensatory and punitive damages in an amount to be determined at trial;

---

[10] Insofar as the Seven Courts Apartments Lease Agreement contains a putative jury trial waiver, that waiver is unenforceable or inapplicable in whole or part because, *inter alia*, defendant breached the lease agreement as set forth above and/or any such waiver does not necessarily run in favor of TPI and as against all plaintiffs.

c.  Costs and attorneys' fees pursuant to 42 U.S.C.  3613(c)(2)

and O.C.G.A. § 13-6-11;

d.  Pre- and post-judgment interest; and

e.  All other appropriate relief.

***

Respectfully submitted this 2d day of September, 2021.

**THE BLOCK FIRM LLC**

*/s/ Aaron K. Block*
Aaron K. Block
Georgia Bar No. 508192
Andrea Perry Block
Georgia Bar No. 531027
Max Marks
Georgia Bar No. 477397
The Block Firm LLC
309 East Paces Ferry Road,
Suite 400
404-997-8419
aaron@blockfirmllc.com
andrea@blockfirmllc.com
max.marks@blockfirmllc.com

*Counsel for Plaintiffs*

## CERTIFICATE OF TYPE STYLE AND SIZE

I hereby certify that the style and size of type used in the foregoing document is Century Schoolbook 14 point.

*/s/ Aaron K. Block*
Aaron K. Block