**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| ELSA FLORES DIAZ and EDWIN MERDRANO CACERES, for themselves And on behalf of their minor children E.M.F., V.M.F., B.M.F., and H.M.F.,<br><br>    Plaintiffs,<br><br>    v.<br><br>THE PARTNERSHIP, INC.,<br><br>    Defendant. | Case. No. 1:21-cv-03661-ELR |

**DEFENDANT'S RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION TO EXCLUDE CERTAIN OPINIONS BY
<u>TPI'S SECURITY EXPERT BRUCE JACOBS, PH.D.</u>**

1

## I.     Introduction

Plaintiffs' Motion to Exclude Certain Opinions by TPI's Security Expert, Bruce Jacobs, Ph.D.[1] (the "Motion") amounts to nothing more than sleight of hand – attempting to dig up, re-hash, and re-frame the conversation on substantive legal arguments under the guise of a *Daubert* motion. To pull this off, Plaintiffs only mention Dr. Jacobs's expert report in passing and almost altogether ignore the Federal Rules of Evidence and Eleventh Circuit *Daubert* progeny. Plaintiffs opt instead to simply piggyback off the Court's statements in its recent Order on several motions. In doing so, Plaintiffs make arguments they vehemently opposed in TPI's own *Daubert* motion – evincing a stark double standard that Plaintiffs hope the Court tolerates. Plaintiffs rely heavily on wordplay, decontextualized deposition testimony, and, crucially, mischaracterizations of Dr. Jacob's report to skirt the

---

[1] Although Plaintiffs do not challenge Dr. Jacobs's credibility as an expert witness, it is important to point out that Dr. Jacobs's credentials and the reliability of his methodology are intertwined. Dr. Jacobs is a tenured Professor of Criminology of the University of Texas at Dallas with nearly 30 years of experience as a professional criminologist. ECF No. 93-1, at p. 1; *see also* **Exhibit A, Dr. Bruce Jacobs CV**, at p. 1-2. Dr. Jacobs has analyzed thousands of crimes all over the country, conducted extensive field work with police departments, secured a plethora of grants funds by agencies and organizations nationwide, conducted hundreds of security assessments and/or surveys of crime prevention measures, developed and taught courses at the undergraduate and Ph.D. levels related to criminology, peer reviews for the leading criminology journal in the world, and has been retained as a criminologist and security expert for over 1,500 cases, for both plaintiffs and defendants. ECF No. 93-1, at p. 1-3; Exhibit A, at p. 1, 15-29.

standards exclusion requires. The Court's *Daubert* gatekeeping role works both ways, and the Court should not adopt Plaintiff's double standard here. Accordingly, the Court should deny Plaintiffs' scattershot Motion masquerading as a *Daubert* motion to exclude.

## II. Background

Defendant The Partnership, Inc. ("TPI")[2] sought the expertise of Dr. Bruce Jacobs, Ph.D. ("Dr. Jacobs") to opine on the security measures TPI undertook to protect its tenants and workers. Dr. Jacobs is a preeminent criminology scholar and expert witness, having been retained as a criminologist and security expert for over 1,500 cases for plaintiffs and defendants. *See generally* ECF 93-1; Exhibit A. Dr. Jacobs produced his Expert Report (the "Report") on June 27, 2022, well before the expert discovery deadline. Still, Plaintiffs chose <u>not</u> to hire and consult their own

---

[2] As mentioned in previous filings by TPI, Plaintiffs have named an improper party. The Partnership, Inc. is not the owner, property manager, or a general or limited partner of Seven Courts Apartments. Seven Courts Partners, LP owns Seven Courts apartment complex. Nonprofit Housing Preservation VI, LLC is the managing co-general partner of Seven Courts Partners, LP, and Fulton Seven Courts Partners LLC is a non-managing general partner of Seven Courts Partners, LP. CCL Seven Courts Associates LLC is a limited partner of Seven Courts Partners, LP, and Chartermac Corporate XXXII SLP LLC is a special limited partner of Seven Courts Partners, LP. Another separate entity, TPI Management Services, LLC, manages Seven Courts Apartments

3

security expert. Now, just before the clock strikes midnight, Plaintiffs seek to exclude "certain opinions" from Dr. Jacobs's Report.

Plaintiffs make hay over Dr. Jacobs's labeling of it as a "preliminary report." But it was only labeled as such to give Dr. Jacobs the opportunity to revise the report in the event additional material or evidence became available – which did not occur. The Report also takes great pains to establish Dr. Jacobs's tried-and-true, peer-reviewed, and widely accepted methodology, the pertinent discovery documents relied on, and his thorough conclusions. To get around this, Plaintiffs cherry-pick isolated quotes from the Report to misrepresent Dr. Jacobs's conclusions and the purposes of his Report.

Plaintiffs claim that Dr. Jacobs formed his opinions based only on the hearsay of others and an informal interview with Seven Courts' property manager, Latoya Wynn. Plaintiffs, however, ignore the hundreds of pages of relevant documents Dr. Jacob also reviewed to form his conclusions, including:

- Plaintiffs' Complaint;
- TPI's Answer;
- TPI's responses to Plaintiffs' first set of discovery responses and Plaintiffs' second set of requests for production;
- Atlanta Police Department reports and an attorney summary;
- Plaintiffs' Depositions; and
- Depositions of Kenneth Hickey, Horace Holt, Latoya Wynn, Maggie Fontaine, Rodrick Harris.

ECF 93-1, at p. 3-4. In addition, Dr. Jacobs stated that he used "content analysis, triangulation, and analytic induction" to review and assess the relevant documents, his site inspection and area canvass, and interview with Ms. Wynn. ECF 93-1, at p. 4. All three methods are widely used, peer-reviewed, reliable, and reproducible techniques in the social sciences. *Id.* at p. 4-5.

Based on his review of the case files, site inspection, area canvass, and interview with Ms. Wynn, Dr. Jacobs reached the opinion that "Seven Courts Apartments took numerous and substantive measures to create an adequate and reasonable crime prevention posture." *Id.* at p. 5. Plaintiffs' focus on only a few of these measures obscures the full picture. TPI's adequate and reasonable measures included:

- Criminal background checks of residents;
- Drug- and crime-free lease provisions;
- Community rules for acceptable behavior;
- Eviction of noncompliant residents;
- Nightly curfew;
- Window locks;
- Deadbolt front entry locks;
- Deadbolts on patio doors;
- Peep holes on unit doors;
- Metal security doors on units;
- Abandoned car towing;
- No trespassing/loitering signage on property;
- Routine vacant unit checks for squatters/drug dealing;
- Periodic inspection of property by ownership;
- Systematic lighting on buildings, doors, and in common areas;
- Routine lighting inspections and repair;

5

- Routine landscaping;
- Property beautification and grounds upkeep;
- Property repair/graffiti removal;
- Fencing in select areas;
- Fence repair;
- Leasing office alarm (to safeguard confidential tenant files);
- HandyTrac™ Electronic Key Control System;
- Periodic HUD and State Inspections of property;
- Routine property inspections by management personnel;
- Annual property inspections by ownership;
- Natural surveillance provided by building structure and property layout.

*Id.* at 5-6. Dr. Jacobs asserted that the measures taken were "consistent with established practices in Crime Prevention Through Environmental Design (CPTED) and Situational Crime Prevention (SCP)," both of which are peer-reviewed, scientific approaches endorsed and/or recommended by local and federal police organizations around the country, including the United States Department of Justice. *Id.* at p. 6.

Dr. Jacobs also opined that further security measures would not likely have prevented the attack on Plaintiffs. *Id.* at p. 6-7 There is no evidence that an armed security guard on duty patrolling at the time of the incident would have prevented the armed robbery – nor is it the expected standard of care in the security industry relating to a spontaneous armed robbery because "criminologists have widely demonstrated in scientific studies that crime and violence can occur despite that presence." *Id.* at p. 6-7.

Finally, Dr. Jacobs did not offer an opinion on any substantive legal questions for the jury to determine, including on the crime's foreseeability. Dr. Jacobs did, however, come to several conclusions that would assist the jury in assessing substantive legal standards – which is exactly what an expert witness is tasked with doing. Specifically, Dr. Jacobs noted that this type of crime would not have been on a property owner's radar as readily preventable. Indeed, Dr. Jacobs pointed out that Seven Courts only experienced "one nighttime predatory gun crime" in the 11 months prior to the incident in question – which does not and cannot establish a pattern to warrant further security measures than already taken by TPI. *Id.* at p. 6, 10.

Dr. Jacobs's Report did not reach legal conclusions on substantive Georgia premises liability law, but instead came to conclusions based on tested, reliable, and peer-reviewed methodology that will assist the jury in weighing the evidence so that the jury can come to its own conclusions. Therefore, Plaintiffs' Motion must be denied.

### III.    Argument

In their attempt to bait-and-switch the *Daubert* and Fed. R. Evid. 702 standards for an expert witness's testimony with the standard for establishing a premises liability claim under Georgia law, Plaintiffs patently misstate the law on several fronts. The Eleventh Circuit has reiterated several times that the Federal

Rules of Evidence are procedural, and federal rules and law therefore apply in federal court. *See, e.g.*, *McDowell v. Brown*, 392 F.3d 1283, 1294 (11th Cir. 2004); *Long v. Raymond Corp.*, 245 F. App'x 912, 915 (11th Cir. 2007); *Dutton v. U.S.*, 621 F. App'x 962, 966 (11th Cir. 2015). In some situations, the substantive state law is so intertwined with an evidentiary rule that the state law applies in federal court. *See, e.g.*, *McDowell*, 392 F.3d at 1294-95 (regarding Georgia's expert competency rules); *Long*, 245 F. App'x at 915 (Alabama's expert competency rules); *Dutton v. U.S.*, 621 F. App'x at 966 (Georgia medical malpractice laws intertwined with evidentiary rules). None of these carve-outs to the general principle applies here, nor do Plaintiffs cite to any federal case excluding a security expert under the reasoning of the Georgia Court of Appeals cases they rely on. Plaintiffs do not doubt Dr. Jacobs's competency as an expert witness – they focus instead on whether select, cherry-picked quotations are reliable and helpful to the jury.

Throughout the Motion, Plaintiffs also assert varying substantive legal standards for the same premises liability claim. To hold a landlord liable on a premises liability claim where there is an intervening criminal act by a third party, a plaintiff must establish (1) foreseeability based on substantive similarity to previous crimes, and (2) superior knowledge of a likelihood of criminal activity on the part of the landlord. *See, e.g.*, *Cleveland v. Team RTR2, LLC*, 359 Ga. App. 104, 106-07; 854 S.E.2d 756 (2021); *Camelot Club Condo Ass'n, Inc. v. Afari-Opoku*, 340 Ga.

App. 618, 621-22; 798 S.E.2d 241 (2017). TPI did not seek Dr. Jacobs's expertise to opine directly on either of these two elements – nor is that the job of an expert witness. Instead, Dr. Jacobs used his wealth of experience and peer-reviewed criminology methods to come to a conclusion on TPI's security measures.

Plaintiffs' Motion essentially boils down to a failure of Dr. Jacobs to conclusively disprove the elements of premises liability. But that was not his job. And – as Plaintiffs readily point out – TPI already moved for and were denied summary judgment, only for Plaintiffs to inappropriately re-hash those arguments under the guise of this *Daubert* Motion. Accordingly, Plaintiffs' Motion must be denied.

### A. Dr. Jacobs's expert opinions will assist the jury.

Dr. Jacobs's opinions that TPI's security measures were reasonable, adequate, and consistent with the customs and practices of the local area will assist the jury in determining whether TPI had superior knowledge and reasonable foreseeability of the incident in question. An important distinction is that Dr. Jacobs was not – and legally could not be – intending to reach a legal conclusion on either of those issues, as they are up to the jury. Plaintiffs, however, try to turn this against Dr. Jacobs, insisting that Dr. Jacobs opine on substantive a landlord's standard of care under substantive Georgia law. That is <u>not</u> the standard of *Daubert* or Fed. R. Evid. 702.

9

With their assertions that testimony deviating from a state's substantive legal standards must be excluded, Plaintiffs misstate the law and misconstrue their own case citations. Because Dr. Jacobs's testimony does not fall into one of the Eleventh Circuit's carve-outs of evidentiary rules so intertwined with substantive state law, Dr. Jacobs's testimony must meet the standard of *Daubert* and Fed. R. Evid. 702. Plaintiffs' claim that Dr. Jacobs's testimony must opine on and satisfy substantive Georgia law on premises liability is therefore without legal basis. Yet Plaintiffs also assert – without citation – that Dr. Jacobs admitted that his opinions have no bearing on any issue the jury will decide. ECF No. 93, at p. 12. Plaintiffs attempt to have it both ways – that Dr. Jacobs's opinions must be excluded because they reach substantive questions for the jury, and also because they do not adequately inform substantive questions that the jury will consider.

Plaintiffs heavily rely on *Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1320 (11th Cir. 1999) to establish the legal standard here, but that case concerns the causal burden and causation evidence in a medical malpractice case – which is one area intertwined enough with evidentiary rules for substantive state law to apply in federal court. Similarly, Plaintiffs' cite to another carve-out, expert competency, in *City of Tuscaloosa v. Harcos Chems.*, 158 F.3d 546, 567 n.27 (11th Cir. 1989), which additionally concerned misstatements of the law by the expert. Furthermore, Plaintiffs' references to Georgia courts' opinions excluding expert testimony on the

reasonableness of security measures are inapplicable because Georgia's state evidentiary rules do not apply in this case. Both *Hadden v. ARE Props., LLC*, 280 Ga. App. 314, 316-17; 633 S.E.2d 667 (2006) and *Sotomayor v. TAMA I, LLC*, 274 Ga. App. 323, 326; 617 S.E.2d 606 (2005) concern the admissibility of expert testimony under Georgia evidentiary rules. Finally, Plaintiffs' reliance on *Carlock v. Kmart Corp.*, 227 Ga. App. 356, 361; 489 S.E.2d 99 (1997) is likewise misplaced, as the Court only found "under the facts of this case" that expert testimony on the foreseeability of a crime was not necessary and therefore upheld the exclusion of the expert's testimony on foreseeability.

These cases are not relevant to Dr. Jacobs's Report and have no bearing on the helpfulness of his Report to the jury. Dr. Jacobs came to conclusions on the reasonableness and adequacy of TPI's security measures, relative to prevailing standards in the science of criminology, considered the customs and practices of other area apartment complexes, and discussed factors that may go into the foreseeability and superior knowledge of a likelihood of crime without opining on either legal conclusion itself. Those opinions will be helpful the jury. Plaintiffs attempt to counter Dr. Jacobs's conclusions by pointing to deposition testimony of Seven Courts personnel. But the weight of evidence – as Plaintiffs pointed out in their response brief in opposition to TPI's *Daubert* motion – is for the jury to consider. *See* ECF No. 78, at p. 17-20.

### B.     Dr. Jacobs's expert opinions are reliable.

As emphasized above, Dr. Jacobs went to great lengths to discuss the methodology that led him to believe that TPI's security measures were adequate, reasonable, and consistent with the customs and practices of other apartment complexes in the area. Indeed, Dr. Jacobs's methodology is based on peer-reviewed, practiced, tried-and-true work by himself in thousands of other cases, along with other expert witnesses and scholars in the field of criminology.[3] *See* ECF No. 93-1, at p. 1-4, 6-7, 10-12; *see generally* Exhibit A.

Again, Plaintiffs misstate the applicable substantive law they claim Dr. Jacobs's was both required and precluded from opining on. The key questions in premises liability cases that involving an intervening criminal act by a third party are superior knowledge and foreseeability. *E.g.*, *Bolton v. Golden Bus., Inc.*, 348 Ga. App. 761, 762-63 ; 823 S.E.2d 371 (2019). This does not produce a "sliding scale" as Plaintiffs argue, yet this standard does insulate landlords from liability under certain situations – such as this – where an intervening criminal act cuts off causation. Similarly, there is no one-way ratchet that Plaintiffs propose; undertaking security measures does not heighten the standard nor constitute evidence that further

---

[3] Again, TPI points out that Plaintiffs do not challenge Dr. Jacobs's qualifications. And in his Report, Dr. Jacobs cited several authorities on his methodology. ECF No. 93-1, at p. 4 n.1-4, p. 5 n.5, p. 7-10, p 10 n.9, p. 11 n.10-13; *see also* Exhibit A.

measures may be required. *See Baker v. Simon Property Group*, 273 Ga. App. 406, 408-09; 614 S.E.2d 793 (2005).

Plaintiffs focus on Dr. Jacobs's admission that the customs and practices are not relevant to the reasonableness of TPI's other security measures. But this is simply another example of Plaintiffs swapping in different legal standards seemingly at random. Dr. Jacobs's opinion on the customs and practices of the local area is reliable, as superior knowledge is an inherently localized concept. Ignoring Dr. Jacobs's professed methodology and the rest of his Report, Plaintiffs instead isolate this one opinion as a basis for exclusion. Dr. Jacobs's opinion that the customs and practices of TPI met the standard of other area apartment complexes is just one more piece of evidence, amid a much broader array of data points and peer-reviewed scholarship, informing his ultimate conclusion that TPI's security measures were reasonable and adequate. Nowhere in Dr. Jacobs's expert report does he claim that his "customs and practices" opinion of the local area is the substantive legal standard – nor is that required under *Daubert* and Fed. R. Evid. 702. Rather, Dr. Jacobs's opinion will assist the jury in determining the superior knowledge of a landlord.

    **C.**    **Dr. Jacobs's expert opinions cannot and do not purport to establish facts for which he does not have personal knowledge.**

Without any citation to binding authority or any reckoning with the breadth of this challenge to mountains of expert witness case law, Plaintiffs argue that Dr.

13

Jacobs' expert opinions must be excluded because he is establishing as fact hearsay to which he has no personal knowledge. But expert witnesses regularly do just that – use their expertise as it pertains to an individual case to opine on matters not personally experienced by them.

Again evincing a double standard, Plaintiffs argued the contrary to the Motion in their response brief to TPI's *Daubert* motion. *See* ECF No. 78, at p. 17-20. In that response brief, Plaintiffs defended their damages expert primarily relying on her interviews with Plaintiffs to come to the conclusions in her report. Yet here, Plaintiffs challenge Dr. Jacobs's use of an interview with Ms. Wynn as <u>one</u> basis, among a plethora of others, informing his opinions. *See* ECF No. 93-1, at p. 6 (concluding that TPI took "numerous and substantive" security measures "[b]ased on my review of all the discovery material in this matter, as well as a site inspection, interview with the property manager, and area canvass").

An expert witness's opinions are not statements of fact deciding important questions before ever reaching a jury. Rather, an expert witness produces a report giving the expert's opinions and conclusions on a set of topics, issues, or questions to assist the jury. It is up to the jury – not the Court – to determine how much weight to give evidence.

TPI would suffer immense prejudice if – just before midnight – the Court excludes the testimony of Dr. Jacobs, while Plaintiffs would suffer none if the status

quo were to be maintained. Plaintiffs have deposed Dr. Jacobs, and, as they pointed out in their response to TPI's *Daubert* motion, Plaintiffs should not use this Court to take decisions away from the jury. If Plaintiffs wish to impeach Dr. Jacobs in front of the jury themselves, then Plaintiffs are more than welcome to do so.

### IV.     Conclusion

For the foregoing reasons, Defendant respectfully requests that this honorable court deny Plaintiffs' Motion seeking to preclude Dr. Bruce Jacobs from offering expert testimony in this case.

Dated May 19, 2023

                                        Respectfully Submitted:

                                        */s/ Jeffrey W. Melcher*
                                        Jeffrey W. Melcher
                                        Georgia Bar No. 501180
                                        424 Church Street, Suite 800
                                        Nashville, TN 37219
                                        615-620-1701 (phone)
                                        844-670-6009 (fax)
                                        jmelcher@dickinsonwright.com

                                        *Counsel for The Partnership, Inc.*

**CERTIFICATE OF COMPLIANCE**

The undersigned hereby certifies that the foregoing pleading complies with the font and point selections approved by the court in Local Rule 5.1C. This pleading has been prepared in Times New Roman font, 14-point.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I have this 19th day of May 2023, served a true and correct copy of the foregoing upon all parties via the U.S. District Court CM/ECF electronic filing and notification system as follows:

Aaron K. Block
Georgia Bar No. 508192
Andrea Perry Block
Georgia Bar No. 531027
Max Marks
Georgia Bar No. 477397
**THE BLOCK FIRM LLC**
309 East Paces Ferry Road, Suite 400
Atlanta, GA 30305
Telephone: (404) 997-8419

aaron@blockfirmllc.com
andrea@blocklawfirmllc.com
max.marks@blockfirmllc.com

*Counsel for Plaintiffs*

*/s/ Jeffrey W. Melcher*
Counsel for The Partnership, Inc.