# Attachment C

**Attachment C – Plaintiffs' Outline of the Case**

Plaintiffs Elsa Flores Diaz, Edwin Medrano Caceres, and their minor children, E.M.F., V.M.F., B.M.F., and H.M.F., were the victims of discrimination and armed robbery due to the intentional and negligent acts of Defendant The Partnership, Inc. ("TPI"). TPI owned and operated Seven Courts Apartments, where Plaintiffs lived from October 1, 2019, until shortly after they were robbed at gunpoint on July 21, 2021.

During their residence at Seven Courts, Plaintiffs faced discrimination because of their Hispanic origin from TPI. Specifically, TPI's manager Latoya Wynn barred the minor Plaintiffs from using the Seven Courts' playground and common areas. Ms. Wynn repeatedly yelled racially discriminatory and inflammatory remarks at the Plaintiffs, invoking their national origin, their immigration status, and the parents' lack of native English-speaking ability. Plaintiffs were also charged higher rent than other residents because they are Latino.

Plaintiffs were also the victims of violent crime while living at Seven Courts. Seven Courts is located in a high-crime neighborhood, and violent crime and drug activity are common and persistent fixtures of the complex. The Atlanta Police Department identified Seven Courts in 2019 as "a location where one can purchase illegal narcotics" and informed ownership that the continuation of this activity could result in the police asking "the Fulton

1

District Attorney to proceed under the appropriate statutes to seize the property" and "the City of Atlanta to declare your property to be a nuisance." Seven Courts was subsequently named by Atlanta and Fulton County Prosecutors as among the "persistently dangerous and unhealthy apartments" they are targeting as part of an ongoing investigation.

TPI received consistent reports of violent crime and drug activity on the property, including reports from one of its security officers that Ms. Wynn was potentially involved in some of the ongoing crime and drug activity. TPI did not investigate these reports. Instead, TPI permitted Ms. Wynn to terminate that security officer's contract.

Despite all of this, and despite both the initial security contractor Ms. Wynn terminated and the subsequent security contractor informing TPI that more security was required to even begin to address the crime problems at the complex, TPI elected to reduce security in May 2021. TPI chose to downgrade what security was present to a more "budget-friendly," limited security package that did not include any armed or unarmed security officer services. Security presence was reduced to an officer occasionally driving through Seven Courts and passing out notices to tenants, such as notices of overdue rent. TPI planned to replace the active security presence with security cameras, but these cameras did not become functional until

November 2021. In addition, the area around Plaintiffs' unit was dark, with no working lighting, which TPI refused to fix.

Plaintiffs were the victims of two attempted home invasions, which TPI failed to redress. Then, on the evening of July 21, 2021, Plaintiffs were robbed at gunpoint. That evening, Plaintiffs left their apartment after dinner to check their mail. They returned and began to re-enter the apartment, the outside of which was pitch-black because the lights intended to illuminate the outdoor walkway had been broken for months. As they attempted to enter their apartment in the dark, a man came up behind them and put a gun to Plaintiff Caceres's head. The assailant forced Plaintiffs into their apartment at gunpoint, demanded money, and threatened Plaintiffs' lives as he rifled through cabinets and drawers. After finding $3,000.00 cash in a drawer (which Plaintiffs had saved to make a payment to the Internal Revenue Service) and taking Plaintiffs Diaz and Caceres' wedding rings, the assailant fled.

During the robbery, the minor Plaintiffs hid in a closet. The eldest minor daughter, V.M.F., called the police. When they police arrived, they noted that there were no cameras that might have captured the incident, which Ms. Wynn confirmed the next day. Afterwards, Ms. Wynn told Plaintiffs that they should leave the Complex "quickly[] because you are

going to get killed." Plaintiffs left Seven Courts shortly thereafter, before their lease period had expired.

## Legal Authorities

Plaintiffs' legal authority includes the following illustrative examples:

1. It is unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services of facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin. 42 U.S.C. § 3604(b).

2. It is unlawful to "coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise of enjoyment of, any right granted or protected by" Sections 3603–3606. 42 U.S.C. § 3617.

3. TPI had a duty to "exercise ordinary care in keeping the premises and approaches safe." *See* O.C.G.A. § 51-3-1.

4. "Landlords have a duty to exercise ordinary care to prevent foreseeable third-party criminal attacks upon tenants.'" *Walker v. Aderhold Props., Inc.*, 694 S.E.2d 119, 121 (Ga. Ct. App. 2010) (quoting *Brookview Holdings v. Suarez*, 645 S.E.2d 559, 566 (Ga. Ct. App. 2007)); *Martin v. Six Flags Over Ga. II, L.P.*, 801 S.E.2d 24, 30 (Ga. 2017).

5. Prior criminal activity substantially similar to the crime in question can give landlords notice of possible future crimes against a person and impose a duty on the landlord. *See Walker*, 694 S.E.2d at 121–22; *FPI Atlanta, L.P. v. Seaton*, 524 S.E.2d 524, 528 (Ga. Ct. App. 1999).

6. "[I]f criminal acts of third parties are reasonably foreseeable, the owner or occupier is required to undertake definite precautions on behalf of its invitees." *Martin*, 801 S.E.2d at 32.

7. Under the Fair Housing Act, "[p]unitive damages may be granted [] if the defendant exhibited a callous indifference to the federally protected rights of the plaintiff." *Davis v. Lane Mgmt., LLC*, 524 F. Supp. 2d 1375, 1377 (S.D. Fla. 2007) (citing *Ferrill v. Parker Group, Inc.*, 168 F.3d 468, 476 (11 Cir. 1999); *see also* [Doc. 92 ("Courts have found [] 'blatant racial statements'" support an award of punitive damages") (quoting *Tolliver v. Amici*, 800 F.2d 149, 151 (7th Cir. 1986)].

8. Under Georgia law, punitive damages may be awarded in "tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A. § 51-12-5.1(b). "'[T]he failure to provide a real "security patrol" for' an apartment complex known to have crime issues 'give[s] rise to a jury

5

issue as to an entire want of care, which gives rise to a presumption of conscious indifference to the consequences for tenants.'" [Doc. 92 (quoting *Seaton*, 524 S.E.2d at 530).

9. Under Georgia law, the jury may award attorneys' fees "where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense." O.C.G.A. § 13-6-11.

10. Under the Fair Housing Act, the Court "may allow the prevailing party . . . a reasonable attorney's fee and costs." 42 U.S.C. § 3613(c)(2).

## Specific Acts of Negligence

TPI breached its duty to exercise ordinary care to prevent foreseeable third-party criminal attacks upon its tenants, had superior knowledge of the dangerous conditions (the violent crime and lack of security) that existed at Seven Courts, and failed to reasonably protect Plaintiffs from the dangers that existed at Seven Courts—namely, reasonably foreseeable criminal acts.

TPI was negligent by:

1. Providing inadequate security at Seven Courts despite knowing that crime like the July 2021 armed robbery of Plaintiffs was reasonably foreseeable given the crimes occurring at Seven Courts both before and during Plaintiffs' tenancy;

6

2. Reducing security measures in May 2021 despite knowing that crime like the July 2021 armed robbery of Plaintiffs was reasonably foreseeable given the crimes occurring at Seven Courts both before and during Plaintiffs' tenancy;

3. Taking insufficient action to prevent crime after being alerted by its own security officers that increased security was needed to curb crime at Seven Courts;

4. Refusing to repair the broken lighting both outside Plaintiffs' apartment and generally on Seven Court's property;

5. Replacing armed security with non-functional cameras; and

6. Failing to investigate and address its own employee's reported involvement in criminal activity at Seven Courts.

## Damages Sought

1. General damages for pain and suffering;

2. Special damages for the property stolen in the July 21, 2021, armed robbery;

3. Punitive damages; and

4. Costs and attorneys' fees pursuant to 42 U.S.C. § 3613(c)(2) and O.C.G.A. § 13-6-11.